| | |
|---|---|
| From: | "Savage, Charles" <savage@nytimes.com> |
| To: | Sheldon Snook <sheldon_snook@dcd.uscourts.gov> |
| Date: | 08/15/2014 04:21 PM |
| Subject: | NYT reporter request for Judge Lamberth |

Hi Shelly - Would you kindly forward this message to Judge Lamberth's chambers? Thanks! Charlie

****

Dear Judge Lamberth,

I write to ask that you please consider, as a matter of public interest, partially unsealing a set of grand jury materials *sua sponte*. The materials consist of the papers filed in respect to a motion to quash a January 2011 subpoena to a reporter, Mike Levine. I am interested only in the papers filed and decision rendered on the motion, and any references identifying the target of the investigation can remain redacted.

For background, Mr. Levine, now of ABC News, was at the time a reporter for Fox News. He revealed the existence of the subpoena in a May 29, 2014, blog posting.
http://abcnews.go.com/Politics/justice-dept-vows-jail-reporters-jobs/story?id=23915952

The subpoena sought his testimony and notes regarding his confidential sources for a July 2009 news story about some then-sealed indictments related to an investigation into Somali-Americans from the Minneapolis area who were traveling to Somalia to fight alongside Al Shabab. Mr. Levine disclosed that the Public Integrity Section investigated the unauthorized disclosure of grand jury information, that the subpoena to him was issued in January 2011, that he fought it and never testified, and that the Justice Department dropped the matter 16 months later. It is my understanding that the underlying investigation into the leak has been closed without charges.

Because Mr. Levine avoided testifying for 16 months, it appears likely that attorneys for Mr. Levine and Fox News made a motion to you, in your capacity at the time as chief judge, seeking to quash the subpoena. Because the Justice Department was in a position to voluntarily withdraw the subpoena, it also appears that the government prevailed in that litigation.

As you are no doubt aware, the current administration has brought criminal charges in eight leak-related cases to date, compared with three under all previous administrations. One of those eight cases, involving the former C.I.A. official Roger Sterling, involves a subpoena to a reporter, James Risen, and has led to some groundbreaking litigation regarding the scope and limits of First Amendment protections for reporters in the Eastern District of Virginia and the Court of Appeals for the Fourth Circuit. Mr. Levine's disclosure that he, too, received a subpoena seeking to compel his testimony about confidential sources, has added to the public history of this era. I submit that a careful release of the presumed litigation before you, with appropriate redactions to protect the identity of the target or targets, would both be consistent with the legal policy purpose behind grand jury secrecy rules while also improving public understanding of this era and the important issues raised by it.

Thank you for considering it,


Charlie Savage

New York Times

Phone: 202-862-0317
Cell: 202-369-6653


# NEWS

# Justice Dept. Vows No Jail for Reporters Doing Their Jobs

### Eric Holder Comments a Glimmer of Hope for NYT Scribe

By MIKE LEVINE

May 29, 2014—

The nation's top law enforcement officials – still under fire for their aggressive campaign against leaks to the media – now say they've never had any intention of letting a journalist go to jail for refusing to identify a confidential source.

It's a stark and unexpected admission from an administration that has prosecuted more leak cases than all of its predecessors combined and has pressed at least two reporters to divulge their secret sources or face jail time.

"As long as I am attorney general, no reporter is going to go to jail for doing their job," Eric Holder, who heads the Justice Department, told news representatives in a private meeting earlier this week.

And that, according to Holder's deputy, has always been Holder's position.

But Holder's Justice Department has threatened for several years to put New York Times reporter James Risen behind bars unless he testifies about one of his confidential sources for a 2006 book on covert CIA operations.

Federal prosecutors first subpoenaed Risen for that information in 2008, and Holder has since approved subsequent subpoenas for Risen to testify about his source, most recently at the upcoming trial of former CIA official Jeffrey Sterling, who, even without Risen's help, was indicted in 2011 for allegedly being the source. Defying a subpoena backed by a judge amounts to contempt of court, which can put someone in jail for up to 18 months.

Risen's case has become part of a much larger uproar over how the Justice Department handles journalists and their confidential sources – an uproar peaking last year with news that federal investigators had secretly obtained phone records from The Associated Press for a separate leak investigation and had described Fox News reporter James Rosen as a criminal "co-conspirator" in another leak probe.

The uproar forced the Justice Department to revise its guidelines for dealing with reporters, specifically when and how federal investigators can obtain a reporter's records.

But a Justice Department official acknowledged that those revisions did not tackle when and how federal investigators can try to compel reporters to testify about their confidential sources, something the

Case 1:11-mc-00261-RCL Document 23-1 Filed 08/19/14 Page 3 of 4

Justice Dept. Vows No Jail for Reporters Doing Their Jobs   Page 2 of 3

comments from Justice Department leadership this week addressed in unprecedented terms.

"So [not jailing a reporter] has been the policy of this attorney general from the start?" ABC News asked Deputy Attorney General Jim Cole at a reporters' roundtable inside the Justice Department Wednesday.

Cole answered simply: "Yes."

It's unclear what that will mean for the Times' Risen, who is now asking the U.S. Supreme Court to weigh in on his case after a federal appeals court ruled against him. But in what might be the only other instance of Holder's Justice Department subpoenaing a reporter to testify about his confidential sources, federal prosecutors ultimately backed down.

"The reporter" in this second, previously undisclosed case is the author of this article. In January 2011, while I was working for Fox News, the Justice Department persuaded a federal grand jury in Washington to subpoena me for my confidential sources after I reported two years earlier that several Somali-Americans were secretly indicted in Minneapolis for joining an al Qaeda-linked group in Somalia.

Professional and personal life under the threat of jail for 16 subsequent months is best captured in a note I wrote to myself at the time: "I've felt like throwing up all day so far … Just that 'racing heart' feeling throughout." Still, I felt I had to protect my confidential sources.

In a letter to the Justice Department on Nov. 30, 2011 – after a tense back-and-forth spanning nearly a year – an attorney representing me, Jay Darden of Patton Boggs in Washington, reiterated that I was "unable to violate [my] professional obligations," adding, "We continue to urge the Department to pursue a less confrontational course that will not have the effect of undermining one of the core pillars of a free press."

Indeed, after several months of silence, a prosecutor from the Justice Department's Public Integrity Section called my attorney April 2, 2012, to say they were withdrawing the subpoena. No explanation given.

On Wednesday, however, Deputy Attorney General Cole might have offered a clue.

Checking to make sure I heard him correctly the first time, I asked Cole, "So it has been the policy to not jail [a reporter] from the beginning?"

Again, he said simply, "Yes."

"So then why issue subpoenas to reporters?" I asked. "What's the point of it if there's no intent to follow through to the end?"

Cole answered: "Just because you issue a subpoena doesn't mean you're jailing anybody. Sometimes people provide information, so it's the legal process and we go through the legal process."

Nevertheless, when asked by a New York Times reporter whether "protecting a source [is] part of a journalist's job," Cole declined to answer.

As for Risen, his attorney, Joel Kurtzberg of Cahill Gordon & Reindel in New York, said Risen is prepared to go to jail if it comes to that.

"He will keep his promise to his source, regardless of the consequences," Kurtzberg said.

Asked whether reporters could still face fines – rather than jail – for doing their jobs while Holder is attorney general, a Justice Department spokesman declined to answer.

The Supreme Court was meeting today to discuss whether to take up Risen's case, and a decision could be announced as early as Monday.

*ABC News' Ariane DeVogue contributed to this report.*

Copyright © 2014 ABC News Internet Ventures